John CZIKALLA, et. al., Plaintiffs,

v.

Sharon MALLOY, et. al., Defendants.

Bill DICKERSON, et. al., Plaintiffs,

v.

Ann CURTIS, et. al., Defendants.

Dale ADAMSON, et. al., Plaintiff,

v.

Cynthia CAREY, et. al., Defendants.

Civ. A. Nos. 86–K–777, 86–K–778
and 86–K–870.

United States District Court,
D. Colorado.

Dec. 8, 1986.

David Hofer, Lakewood, Colo., for plaintiffs.

L. Richard Musat, Hall and Evans, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

These three civil rights cases involve similar issues and different parties. Plaintiffs' counsel is the same in each action. Each case involves a suit against Department of Social Services employees for removing children from their respective homes pursuant to the child abuse statutes of the State of Colorado.

For obvious reasons of economy and expedition of a final decision, I ORDER these cases consolidated. As indicated above, the Consolidated Civil Action No. is 86–K–777. All subsequent pleadings in these matters shall be filed accordingly.

## I.

### BACKGROUND

Plaintiffs' complaints state that on various dates between November 15, 1985, and January 19, 1985, several social workers employed by the departments of social services of Arapahoe County and Chaffee County caused plaintiffs' children to be removed from their parents' home and custody and placed in foster care. The allegations of defendant social workers set forth to justify their actions include the following: a daughter in danger of sexual molestation by her brother, parental sexual molestation of all their children, and violent physical abuse of a daughter. Plaintiff parents contend these accusations are wholly without merit or are wildly exaggerated.

For example, the Czikalla parents argue defendants took their children away from them despite medical information which purportedly implicated the childrens' day care provider and cleared the parents of any wrongdoing. Another plaintiff father, Dale Adamson, argues his daughter's alleged danger of sexual molestation by her brother was based "on a minor incident of sexual contact which took place over eight years ago." No similar incident is alleged to have occurred since that time. The Dickerson parents similarly argue defendants removed their daughter because of alleged violent physical abuse despite defendants' purported awareness that these allegations were founded on a single, isolated incident—"Laura Dickerson had struck her daughter with a belt and left a small bruise." The Dickersons contend there was no evidence even vaguely suggesting the parents were engaging in an on-going, repeated series of child abuse incidents.

The parents' complain of the alleged erroneous and damaging classifications of their actions as constituting "physical child abuse", "sexual molestation" or "danger of sexual molestation". Moreover, plaintiffs complain of the corresponding removal of their children without any reasonable or sincere belief that such action was prudent, necessary, or appropriate.

These actions are brought pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiffs seek: declaratory judgments that their constitutional rights have been violated, compensatory and punitive damages, attorney fees and costs, and any other relief I may deem appropriate. At this point, I voice no opinion as to the truth of these child abuse allegations or their respective counter allegations. Nor shall I attempt to draw a line between alleged legitimate "parental discipline" and outright child abuse with regard to the facts of these cases. These determinations must be made, if at all, by a jury. I rule now only on defendants' motions for summary judgment and defendants' motion to reconsider a previous ruling on their motion for summary judgment.

## II.

### DEFENDANTS' MOTIONS

Although it is proper to consolidate these three cases, they are currently in different stages with respect to the disposition of the summary judgment issues. In Case No. 86–K–778, I have already ruled on defendants' summary judgment motion and now must rule on their motion to reconsider that decision. In Case No. 86–K–870, defendants have filed a motion for summary judgment upon which I must now rule. In Case No. 86–K–777, Magistrate Abram has informed me a summary judgment motion is forthcoming which, in all probability, will advance the same arguments already posed in the other motions. In light of today's opinion, each case is remanded to Magistrate Abram for him to conduct settlement conferences.

### A. ARAPAHOE COUNTY'S MOTION TO RECONSIDER (86–K–778).

On June 4, 1986, I issued an order denying defendants' motion for summary judgment on six separate grounds: (1) I have subject matter jurisdiction since this is not exclusively a child abuse state law case, but rather, a civil rights case brought pur-

suant to federal statutes thus conferring jurisdiction under 28 U.S.C. §§ 1331 and 1334; (2) Collateral estoppel is inapplicable because there was no prior judgment in state court; (3) Defendants are not entitled to immunity because this depends on whether they acted in good faith which is inherently a question of fact and thus determined by trial; (4) Colorado Juvenile Court Rule 13 is irrelevant because it is not challenged by plaintiffs as unconstitutional; (5) Whether Arapahoe County Board of Commissioners alleged deprivation of constitutional rights was merely "negligent" or "intentional" is a question of fact which must await trial; and, finally, (6) Whether the board has control over the social workers, and their actions, raises issues of material fact which cannot be resolved on a motion for summary judgment.

The motion to reconsider my order primarily addresses the issue of the immunity of defendant social workers. Defendants argue it has been held that actions taken by court supervised persons pursuant to court order or direction are "absolutely immune" from liability under 42 U.S.C. § 1983. *See T & W Investment Co., Inc. v. Kurtz,* 588 F.2d 801 (10th Cir.1978) (court-appointed receiver carrying out orders of his appointing judge held absolutely immune).

Defendants further argue that in a case factually similar to the instant case, the Sixth Circuit held various defendants—including social services agency officials responsible for the prosecution of child abuse and neglect cases—were absolutely immune from damages for allegedly terminating the plaintiffs' parental rights in violation of due process. *Kurzawa v. Mueller,* 732 F.2d 1456 (6th Cir.1984). The court stated at 1458 of the opinion:

> [D]efendants are state employees who are responsible for the prosecution of child neglect and delinquency petitions in the Michigan courts. It is their responsibility, and others in similar positions, to

protect the health and well-being of the children of Michigan. They must be able to perform the necessary tasks to achieve this goal without the worry of intimidation and harrassment from dissatisfied parents. Accordingly, these defendants ... are entitled to immunity.

Other courts, however, have held differently. In *In Re Scott County Master Docket,* 618 F.Supp. 1534 (D.Minn.1985) the court held:

> Governmental officials do enjoy a qualified or *good faith immunity in Section 1983 actions.* (emphasis added).

*Id.* at 1549.

■ Accordingly, plaintiffs have correctly stated that defendants are entitled only to "good faith" immunity, not "absolute" immunity. In *Kurtz, supra,* the Tenth Circuit did not intend to immunize all persons acting pursuant to any judicial order whatsoever.[1] In light of subsequent Tenth Circuit case law, which I shall discuss shortly, *Kurtz* was limited to judges and court officials.

Defendants have cited *Kurzawa v. Mueller, supra* and *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D.N.Y.1983) in support of absolute immunity for social workers. These cases rely on: (1) the principle that absolute immunity attaches to a person following a court order; and, (2) the corresponding policy considerations which suggest social workers should be free from harrassing lawsuits as they try to protect children. I recognize these policy considerations are clearly of the utmost importance, however, they are not the *only* interests of utmost importance which courts have a duty to protect. Undoubtedly, plaintiffs have a protected liberty interest under the Fourteenth Amendment in keeping their family unit together. *Santasky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1338, 1394, 71 L.Ed.2d 599 (1982). In a complex world, there is often an intricate web of compet-

---

1. *See also Sebastian v. United States,* 531 F.2d 900 (8th Cir.1976) *cert. denied* 429 U.S. 856, 97 S.Ct. 153, 50 L.Ed.2d 133 (1976) ("We do not hold that the unquestioning execution of a judi-cial directive may never provide a basis for liability against a state officer." 531 F.2d 903, n. 6).

ing and conflicting policy interests, all of which are of the highest importance. In this case, that web of competing and conflicting interests is the protection of these parents' constitutional rights *vis. a vis.* the protection and safety of their children and the functioning of government workers pursuing a stated public policy. Because these various interests conflict on occasion, an equitable balancing test must be employed.

The Supreme Court in *Malley v. Briggs*, 475 U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), rejected the *exclusive application* of the policy arguments defendants have urged supporting absolute immunity. The Court instead held that a "good faith" immunity provides an equitable balancing between the constitutional rights of the citizens, and immunizing "all but the plainly incompetent or those who knowingly violate the law." 475 U.S. at ——, 106 S.Ct. at 1096, 89 L.Ed.2d at 278. The Court noted that while prosecutors are absolutely immune from suit, "they are subject to a comparatively well developed system of professional enforcement by the organized bar. The absence of a comparatively well developed and pervasive mechanism for controlling police misconduct weighs against allowing absolute immunity for the officer." 475 U.S. at ——, 106 S.Ct. at 1097, 89 L.Ed.2d at 279, 280, n. 5.

Applying the Supreme Court's analysis to the instant case, these social workers have no mechanism to control their possible misconduct and as such they constitute a group clearly unsuitable for cloaking with absolute immunity.

As I alluded to earlier, the Tenth Circuit has used such a balancing test in *G.M. Leasing Corp. v. United States*, 560 F.2d 1011 (10th Cir.1977) *cert. denied* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978). There, IRS agents executed a directive for the seizure of a taxpayer's property. The Tenth Circuit rejected the argument that the agents were performing a duty "which necessarily involved the exercise of discretion which public policy requires be made without fear of personal liability." 560 F.2d at 1014. Absolute immunity for the agents was rejected, and a good faith immunity was recognized. The court reasoned that the more limited immunity struck "an equitable balance between the conflicting interests [of protecting] the right of private citizens to seek judicial redress ... as to malicious abuse[, on the one hand,] and the effective function of government as long as [it was] based upon an honest and sincere belief in its lawfulness[, on the other]." 560 F.2d at 1015.

In *Doe v. County of Suffolk*, 494 F.Supp. 179 (E.D.N.Y.1980), the court found the actions of a social worker are more like that of a police officer, as opposed to a prosecutor. Absolute immunity was rejected and a qualified immunity (good faith immunity) was allowed.[2] *See also Cameron v. Montgomery City Child Welfare Service*, 471 F.Supp. 761 (E.D.Penn.1979) (good faith immunity, not absolute immunity, available to welfare caseworkers).

Plaintiff does not contest the absolute immunity available to a witness who testifies in a judicial proceeding. However, plaintiffs do not ground their action on the courtroom testimony of defendants.

Thus, the motion is denied. Defendants' other arguments contained in the motion to reconsider are exactly the same as those set forth below in the motion for summary judgment and I shall address them jointly.

### B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (86–K–870).

Defendants' motion for summary judgment sets forth the following three arguments: (1) Defendants are absolutely immune from any liability because all actions

---

**2.** *Doe* has been criticized by the following cases: *Whelehan v. Monroe County*, 558 F.Supp. 1093 (W.D.N.Y.1983) and *Wagner v. Genesee Board of Commissioners*, 607 F.Supp. 1158 (E.D.Mich. 1985). I choose, however, not to follow the reasoning of these decisions because I think

they have missapplied or have disregarded not only the Supreme Court's application of good faith immunity, but also the corresponding necessity of balancing the respective competing interests.

complained of were done pursuant to court order; (2) Since the juvenile court matter, 85–JV–178, is still "pending" before the Juvenile Court for Arapahoe County, the abstention doctrine should be invoked to bar this action pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); and, (3) plaintiff is equitably estopped from now contesting the initial removal of his child from his home because at the July 31, 1985, adjudicatory hearing, he admitted his daughter was "dependent and neglected". For the following reasons, defendants' motion for summary judgment is denied.

### 1. *Absolute Immunity.*

As I have ruled above with respect to the motion to reconsider, there is no absolute immunity for social workers. Defendants are, however, entitled to good faith immunity. *See Malley v. Briggs, supra; G.M. Leasing Corp. v. United States, supra.*

### 2. *Abstention.*

Defendants argue I should abstain in this action pursuant to *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). In *Moore,* plaintiff parents complained they had been wrongfully deprived of the custody of their children, and that the Texas statutes unconstitutionally infringed their family integrity. The constitutional issues were not reached, however, because the Court held:

> This appeal first raises the question whether in light of the pending state proceedings, the Federal District Court should have exercised its jurisdiction. *We conclude that it should not have done so and accordingly reverse and remand with instructions that the complaint be dismissed.* (emphasis added).

*Id.* at 418, 99 S.Ct. at 2374.

■ This case is controlling and applicable to the instant case, contrary to plaintiffs' assertions. However, it is not clear to me from the pleadings what "state proceedings" are currently pending. Defendants do not explain the nature of these state court proceedings. Plaintiffs, on the other hand, state "the state court proceedings are *resolved* except for semi-annual review hearings which could continue until the children reach majority." The essence of the abstention doctrine is to avoid interference with a state's adjudication process. If a decision has been made, abstention is not permissible.

■ Given these sketchy facts, I cannot abstain. Should defendants submit a motion which sets forth, in detail, the nature of the state court proceedings currently pending I shall decide whether to abstain. Until then I retain jurisdiction. I note in passing that *In Re Scott County Master Docket, supra,* held plaintiffs' allegations that defendants fabricated sexual abuse charges in reckless disregard for the truth and in willful indifference to the parents' rights resulting in the children being taken away from them, was a valid cause of action under 42 U.S.C. § 1983, even though there may have been adequate state remedies available to the parents.

### 3. *Equitable Estoppel.*

■ Defendants argue plaintiff originally admitted his child was "dependent and neglected" and as such should be equitably estopped from changing his position and seeking damages.

There is a factual dispute, however, as to the exact nature of the admissions made by plaintiff, thus, summary judgment is inappropriate.

IT IS THEREFORE ORDERED THAT:

1. These three cases are consolidated into one action now numbered Consolidated Case No. 86–K–777.

2. Defendants' motion to reconsider is denied.

3. Defendant's motion for summary judgment is denied.

4. The cases are remanded to Magistrate Abram.