Ronald ALLISON, Plaintiff,

v.

UTAH COUNTY CORPORATION, et al., Defendants.

No. 2:03–CV–632 PGC.

United States District Court,
D. Utah,
Central Division.

Sept. 14, 2004.

Kathleen M. Liuzzi, Dunn & Dunn, Salt Lake City, UT, Michael W. Homer, Jesse C. Trentadue, Suitter Axland, Salt Lake City, UT, for Utah County Corp. adn Sherry Regan.

Allan L, Larson, Heather S. White, Snow, Christensen & Martineau, Salt Lake

City, UT, for Springville City Corp. and Dean Petterson.

Ronald Allison, Springville, UT, Pro se.

## MEMORANDUM & ORDER

CASSELL, District Judge.

Plaintiff filed suit under 42 U.S.C. § 1983 against Utah County Corporation, Springville City Corporation, Detective Dean Petterson, and Deputy County Attorney Sherry Ragan[1] alleging that they violated his Fourth Amendment rights. Defendants Utah County and Ragan (hereinafter "Utah County Defendants") have filed a Combined Motion to Quash Service of Process and Motion to Dismiss under Rule 12(b)(5), (6) of the Federal Rules of Civil Procedure. (Dkt.# 5.) Plaintiff has not filed an opposition to the motion.

Plaintiff alleges in his complaint that Defendant Detective Petterson, a Springville City officer, searched his residence and seized property without a warrant in violation of the Fourth Amendment. Plaintiff further alleges that Defendant Ragan conspired with Detective Petterson in the alleged constitutional violation. In addition, Plaintiff alleges that Defendant Utah County, as Defendant Ragan's employer, is responsible for her allegedly unlawful acts. (See Compl. at 2, 5.) The Utah County Defendants seek dismissal on several grounds: (1) failure to make proper service of process, (2) prosecutorial immunity, (3) Eleventh Amendment immunity, and (4) the rule against respondeat superior liability.

## I. Failure to Effect Proper Service

■ "Effectuation of service is a precondition to suit." *Jenkins v. City of*

*Topeka,* 136 F.3d 1274, 1275 (10th Cir. 1998). Although the court construes pro se pleadings liberally, a pro se litigant is required to follow the same rules of procedure as other litigants. *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992). Specifically, a pro se litigant "is still obligated to follow the requirements of Fed.R.Civ.P. 4." *DiCesare v. Stuart,* 12 F.3d 973, 980 (10th Cir.1993); *Espinoza v. United States,* 52 F.3d 838, 841 (10th Cir.1995). The plaintiff has the burden of establishing the validity of service. *FDIC v. Oaklawn Apts.,* 959 F.2d 170, 174 (10th Cir.1992).

Under Rule 4(j)(2) of the Federal Rules of Civil Procedure, service upon a state, a municipal corporation, or other governmental organization "shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state." The Utah Rules of Civil Procedure provide that service upon a county shall be made by delivering a copy of the summons and complaint to the county clerk. Utah R. Civ. P. 4(d)(2)(G)

■ In the instant case, Plaintiff attempted to effect service on Defendant Utah County by leaving a copy of the summons and complaint with Michelle Grimshaw, a secretary to one of the Utah County commissioners, who happened to be in the commissioners' office when the process server arrived to serve the complaint. (See Return of Service, Dkt # 4.) The summons and complaint were not delivered to Kim Jackson, the Utah County Clerk, as required by the Federal Rules. Therefore, service upon Utah County was ineffective.

---

1. Plaintiff misspelled Defendant Ragan's name as "Regan" in the complaint. The court has used the correct spelling in this order.

■ With regard to Defendant Ragan, the Federal Rules provide that service upon an individual may be effected

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. (4)(e)(2).

Service upon Defendant Ragan was attempted by leaving the summons and complaint with a receptionist in Defendant Ragan's office. (See Return of Service, Dkt # 4.) Defendant Ragan had not authorized anyone to accept service on her behalf. Thus, service upon Defendant Ragan was invalid as well.

Under the Federal Rules, a plaintiff must serve the defendants within 120 days of filing the complaint. Fed.R.Civ.P. 4(m). In the instant case, the complaint was filed July 18, 2003, requiring that service be effected by approximately November 15, 2003. The attempted service on defendants was accomplished on November 12, 2003. Thus, Plaintiff has failed to effect valid service within 120 days as required by the Federal Rules. In such a case, the Rules provide as follows:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff

shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

■ "The general rule is that 'when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant.'" *Gregory v. United States/United States Bankruptcy Court for the Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir.1991)(quoting *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n. 2 (10th Cir.1983)); see 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 (3d ed.2004). Since it appears that Plaintiff, if given the opportunity, would be able to effect proper service, he should be given a reasonable time to do so as discussed below.

## II. Motion to Dismiss Under Rule 12(b)(6)

The Utah County Defendants contend that Plaintiff's claims against them should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Specifically, they assert that Defendant Ragan is entitled to prosecutorial and Eleventh Amendment immunity, and Defendant Utah County may not be held liable under a theory of respondeat superior.

It is well settled that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir.2004); *Gonzales v. City of Castle*

*Rock,* 366 F.3d 1093, 1096 (10th Cir.2004). In reviewing the complaint, the court accepts all well-pleaded facts as true, construes the complaint liberally, and draws all reasonable inferences in favor of the plaintiff. *Gonzales,* 366 F.3d at 1096; *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir.2002).

## A. Prosecutorial Immunity

■ Defendant Ragan contends that she is entitled to absolute immunity in her capacity as prosecutor. The Supreme Court has adopted a functional approach to the question of prosecutorial immunity. Prosecutors enjoy absolute immunity from suit for actions that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *accord DiCesare,* 12 F.3d at 977. However, when a prosecutor acts in an investigative or administrative role, his actions are protected by only qualified immunity. *DiCesare,* 12 F.3d at 977; *see Kalina v. Fletcher,* 522 U.S. 118, 125–27, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Thus, in determining immunity, the court examines "the nature of the function performed, not the identity of the actor who performed it." *Kalina,* 522 U.S. at 127, 118 S.Ct. 502 (quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

This "function test" has been fleshed out by the Supreme Court in subsequent cases. In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that the Attorney General of the United States was entitled to only qualified, not absolute, immunity for authorizing a warrantless wiretap. In applying the functional approach, the Court noted that Mitchell was not acting in a prosecutorial capacity when the allegedly unconstitutional conduct arose, but instead was performing his national security function. *Id.* at 520–24, 105 S.Ct. 2806.

■ Similarly, in *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Court held that in providing legal advice to the police during the preliminary investigation of the facts of a criminal case, the prosecutor was entitled only to qualified, not absolute, immunity. The Court stated that "[a]bsolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation." *Id.* at 494, 111 S.Ct. 1934. Thus, in determining absolute immunity, courts should "inquire whether the prosecutor's actions are closely associated with the judicial process." *Id.* at 495, 111 S.Ct. 1934. The Court noted that it would be "incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id.*

Finally, in *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Supreme Court held that prosecutors were not entitled to absolute immunity for allegedly fabricating evidence during the preliminary investigation of a crime. The Court again applied the function test, noting that a prosecutor's administrative duties and investigative functions that are not related to his role as advocate in preparing for, or initiating, a prosecution, or for judicial proceedings are not entitled to absolute immunity. *Id.* at 273, 113 S.Ct. 2606. The Court stated:

There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detec-

tive's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

*Id.* at 273, 113 S.Ct. 2606 (quoting *Hampton v. City of Chicago,* 484 F.2d 602, 608 (7th Cir.1973)).

 In determining immunity, the court accepts Plaintiff's allegations as true. *Kalina,* 522 U.S. at 122, 118 S.Ct. 502; *see Buckley,* 509 U.S. at 261, 113 S.Ct. 2606. Reading the complaint liberally, Plaintiff alleges that Defendant Ragan participated in a conspiracy with Defendant Detective Petterson to search Plaintiff's residence and seize evidence without a warrant. Accepting this allegation as true, Defendant Ragan's alleged actions were not "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430, 96 S.Ct. 984. Rather, her actions are similar to those of the prosecutors in *Burns* and *Buckley* in that they occurred in the context of a police investigation. The case is analogous to *Mitchell* in that Plaintiff implicitly alleges that Defendant Ragan authorized a warrantless search. Accordingly, under the facts alleged, Defendant Ragan is not entitled to absolute immunity for her actions with regard to the search of Plaintiff's residence.[2]

## B. Eleventh Amendment Immunity

 Plaintiff has sued Defendant Ragan in both her personal and official capacities. Defendant Ragan asserts that be-

cause she prosecutes cases on behalf of the state, she enjoys Eleventh Amendment immunity from suit in her official capacity as an officer of the state.

 The Eleventh Amendment bars a suit for damages against a state in federal court. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Since an official capacity suit is just another way of pleading a suit against the entity the official represents, a suit against a state official in his official capacity is the same has suing the particular state agency. *Kentucky v. Graham,* 473 U.S. at 165, 105 S.Ct. 3099; *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Monell v. Dep't of Social Servs. of N.Y.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the Eleventh Amendment also prohibits a suit for damages against a state official sued in his official capacity. *See Hafer,* 502 U.S. at 25, 112 S.Ct. 358 ("Suits against state officials in their official capacity therefore should be treated as suits against the State."); *Kentucky v. Graham,* 473 U.S. at 166, 105 S.Ct. 3099.

 The existence of Eleventh Amendment immunity is a question of federal law. *Duke v. Grady Mun. Schs.,* 127 F.3d 972, 978 (10th Cir.1997). In the instant case, whether Defendant Ragan is entitled to Eleventh Amendment immunity depends upon whether the office of the county attorney is an arm of state government or of county government. This can be a complex question which "can only be answered 'after considering the provisions of state law that define the agency's character.'" *Id.* (quoting *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 n. 5, 117

---

**2.** The court makes no determination on the merit of Plaintiff's claims.

S.Ct. 900, 137 L.Ed.2d 55 (1997)). Factors to be considered in making this determination are "local versus state control, the characterization and definition of the entity in its enabling and implementing legislation, state court interpretations and characterization of the entity, the functions of the entity, the fiscal independence of the entity, and the legal liability of the state for the entity's debts." *Duke*, 127 F.3d at 978 (citations omitted).

After examining the provisions of Utah law relating to the position of county attorney, the court concludes that the county attorney is a county, not a state, officer. First, Utah statutory law designates the county attorney as a "county officer." Utah Code Ann. § 17–53–101. Although the county attorney is authorized to prosecute criminal charges on behalf of the state, he may prosecute only those offenses committed within the county. § 17–18–1(1)(a)(i). Similarly, expenses of the county attorney in prosecuting criminal cases are charged against the county. § 17–50–319(b). Further, most of his enumerated duties relate solely to the county. For example, he must ascertain what property within the county has escheated to the state, § 17–18–1(4)(a); defend all actions brought against the county, § 17–18–1(7)(a); prosecute all actions for the recovery of debts, fines, and penalties on behalf of the county, § 17–18–1(7)(b); give an opinion, when required to do so, to county officers on matters relating to the duties of their offices, § 17–18–1(7)(c); deliver receipts for money received in an official capacity, and file duplicates with the county treasurer, § 17–18–1(7)(d); file with the county auditor a monthly account of all money received in an official capacity, and

pay it over to the county treasurer, § 17–18–1(7)(e); and act as the legal advisor to the county, and attend meetings of the county legislative body when required to do so, § 17–18–2. The county attorney must be a registered voter in the county in which he is elected, and must have been, on the date of election, a resident of the county for at least one year. § 17–18–5(1). If a vacancy occurs in the office of county attorney, and certain conditions are met, the county legislative body has the authority to appoint a nominee to serve out the unexpired term. §§ 17–53–104(2), 20A–1–509.1(5). The county attorney is required to have his office at the county seat, and must keep his office open for business as authorized by the county legislative body. § 17–16–9. His salary is set by the county legislative body, § 17–16–14, and is paid out of county funds, § 17–16–18. Further, before the county attorney may discharge his duties, a general fidelity bond must be acquired, the amount of which is prescribed by the county legislative body, and the cost of which is paid out of county funds. § 17–16–11. *See also Johnson v. Bankhead*, 120 Utah 71, 232 P.2d 372, 373 (1951)(stating "the fact that the county attorney represents the state in certain cases does not make him a state officer."). Since the court finds that Defendant Ragan is properly classified as a county officer, rather than a state officer, she is not entitled to Eleventh Amendment immunity in her official capacity.[3]

### III. Liability of Defendant Utah County and Defendant Ragan in Her Official Capacity

■ As discussed above, "[a] suit against a municipality and a suit against a

---

**3.** The court is aware that other cases have reached the opposite conclusion on the question of Eleventh Amendment immunity for prosecutors. *See, e.g., Arnold v. McClain*, 926 F.2d 963, 965–66 (10th Cir.1991); *Rozek v.*

*Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989); *Schroeder v. Kochanowski*, 311 F.Supp.2d 1241, 1253–54 (D.Kan.2004); *Bond v. Utah County Corp.*, No. 2:03–CV–633 DAK (D.Utah Aug. 5, 2004). However, after

municipal official acting in his or her official capacity are the same." *Watson v. City of Kansas City, Kan.,* 857 F.2d 690, 695 (10th Cir.1988); *see Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Accordingly, the court treats Plaintiff's claims against Defendant Utah County and Defendant Ragan acting in her official capacity as one claim. *Watson,* 857 F.2d at 695.

■ Plaintiff alleges that Defendant Utah County is the employer of Defendant Ragan, and is therefore responsible for her unlawful acts. However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A defendant may not be held liable on a theory of respondeat superior. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1189 (10th Cir.2003). Stated another way, in an official capacity suit, the plaintiff must show that the entity itself was a "moving force" behind the constitutional deprivation. *Kentucky v. Graham,* 473 U.S. at 166, 105 S.Ct. 3099. Thus, in an official capacity action, the municipality's "policy or custom" must have played a part in the violation of federal law. *Id.* Section 1983 imposes liability on a government entity only when the entity's policy "causes" its employee to violate the constitutional rights of another. It does not impose vicarious liability based upon the employer-employee relationship. *Monell,* 436 U.S. at 692, 98 S.Ct. 2018. Thus, "a plaintiff suing a county under section 1983 must demonstrate two elements: (1) a mu-

nicipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. County Bd. of County Comm'rs,* 151 F.3d 1313, 1318 (10th Cir.1998).

■ In the instant case, Plaintiff's complaint contains no allegation that the alleged constitutional violation was the result of a county policy or custom; rather, it simply alleges that Utah County is responsible for the allegedly unlawful actions as Defendant Ragan's employer. Since liability cannot be imposed vicariously under section 1983, the complaint fails to state a claim upon which relief can be granted against Defendant Utah County and Defendant Ragan in her official capacity.

## IV. ORDER

The motion to dismiss (Dkt.# 5) is GRANTED as to Defendant Utah County and Defendant Ragan in her official capacity. The motion is DENIED as to Defendant Ragan in her personal capacity.

Service upon Defendant Ragan in her personal capacity was ineffective and is hereby quashed. Plaintiff will be allowed additional time up to October 15, 2004 to effect proper service upon Defendant Ragan in her personal capacity.

---

examining the Utah statutory scheme, the court concludes that the office of county attorney in Utah is not an arm of the state.